# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

CAROL A. WILSON, *et al.*,

      Plaintiffs,

    v.                                   Civil Action 2:18-cv-1779
                                          Magistrate Judge Chelsey M. Vascura

DM EXCAVATING, LLC,

      Defendant.

## OPINION AND ORDER

This matter, in which the parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c), is before the Court on the Motion for Summary Judgment of Plaintiffs Carol A. Wilson, Administrator, and Trustees of the Ohio Operating Engineers Health and Welfare Plan, the Ohio Operating Engineers Pension Fund, the Ohio Operating Engineers Apprenticeship and Training Fund, and the Ohio Operating Engineers Education and Safety Fund ("Plaintiffs' Motion for Summary Judgment").  (ECF No. 20.)  For the following reasons, Plaintiffs' Motion for Summary Judgment is **GRANTED IN PART and DENIED IN PART**.

## I.    BACKGROUND

Plaintiffs are the Administrator and Trustees of the Ohio Operating Engineers Health and Welfare Plan, the Ohio Operating Engineers Pension Fund, the Ohio Operating Engineers Apprenticeship and Training Fund, and the Ohio Operating Engineers Education and Safety Fund (the "Funds").  The Funds are jointly-administered, multiemployer fringe benefit programs

established for the benefit of employees of contractors who perform work pursuant to a collective bargaining agreement (the "CBA", ECF No. 20-1) with the International Union of Operating Engineers, Local Nos. 18, 18A and 18B. The Funds provide health and welfare, pension, and other fringe benefits to their beneficiaries.

On March 28, 2017, Defendant DM Excavating, LLC ("DM") executed a "Distribution and Maintenance Agreement State of Ohio All Zones," by which DM became bound by the terms of the CBA. (ECF No. 1-1.) The CBA is limited in both geographic jurisdiction, which covers 85 counties in Ohio and 4 counties in Kentucky,[1] and craft jurisdiction, which covers "distribution pipeline construction and maintenance work." (CBA 3, 16, ECF No. 20-1.) Of relevance here, the CBA requires employers such as DM to make fringe benefit contributions to the funds. Article XII states, "Fringe Benefits shall be paid on all hours paid." (*Id.* at 19.)

As provided by the CBA, the Funds conducted an audit of DM's payroll records for the period of March 1, 2017, to June 1, 2019. (Wilson Aff. ¶ 6, ECF No. 20-1.)[2] The audit disclosed that DM had not made fringe benefit payments during the audit period for work done by David McElrath (the sole owner of DM), Brad Doan, and Joel McElrath (both employees of DM). Plaintiffs seek $199,260.96 in delinquent contributions for the audit period, as well as interest and liquidated damages. (Wilson Aff. ¶ 6, ECF No. 20-1.) Plaintiffs now move for summary judgment on all of their claims (other than attorney's fees and costs, which Plaintiffs indicate they will seek in a post-judgment motion).

---

[1] The CBA's "Geographical Zones" comprise all counties in Ohio with the exceptions of Columbiana, Mahoning, and Trumbull counties, and the Kentucky counties of Boone, Campbell, Kenton, and Pendleton. (CBA 16, ECF No. 20-1.)

[2] Plaintiffs' Complaint, filed December 26, 2018, included a claim for an audit of DM's books and records. (Compl. ¶ 12, ECF No. 1.) Plaintiffs' Motion makes it clear that DM permitted an audit in September 2019, and, accordingly, the audit claim is now moot.

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citation omitted). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

## III. DISCUSSION

Plaintiffs seek to recover several categories of damages: delinquent fringe benefit contributions, interest, and liquidated damages. The Court will address each of these categories in turn.

### A. Fringe Benefit Contributions

The Employee Retirement Income Security Act ("ERISA") creates a cause of action for plan fiduciaries to recover contributions owed under a collective bargaining agreement. 29 U.S.C. §§ 1145, 1132(a)(3). When a union establishes a multi-employer fringe benefit trust fund, and when the union enters into a collective bargaining agreement with an employer that requires contributions to that trust fund, the fund becomes a third-party beneficiary of the collective bargaining agreement and is entitled to rely on its literal terms. *Bd. of Tr. of the Plumbers, Pipe Fitters & Mech. Equip. Serv., Local Union No. 392 Pension Fund v. B & B Mech. Servs., Inc.*, 813 F.3d 603, 609 (6th Cir. 2015).

Here, there is no dispute that DM was party to the CBA during the audit period of March 1, 2017 to June 1, 2019. The dispute concerns whether delinquent contributions were properly assessed during the audit period against three specific employees: David McElrath, Brad Doan, and Joel McElrath.

#### 1. David McElrath

DM admits that David McElrath performed some work covered by the CBA's craft and geographic jurisdictions, but asserts that only approximately 25–40% of his time working for DM was spent on construction and maintenance work that could be covered by the CBA. (Urick Aff. ¶ 8, ECF No. 21-2.) DM argues that it should not be liable for delinquent contributions assessed by the Funds for the total number of hours worked by David McElrath, because (1) he is

the sole owner of DM, and (2) less than half of his hours worked were within the craft jurisdiction of the CBA. Both of the arguments lack merit.

First, "the Southern District of Ohio has . . . required fringe benefit contributions on behalf of the owners of signatory employers where the very same Funds at issue here [i.e., Plaintiffs in the case at bar] sought recovery." *Wilson v. A&K Rock Drilling, Inc.*, No. 2:16-CV-739, 2017 WL 2422800, at *7 (S.D. Ohio June 5, 2017) (citing *Orrand v. Scassa Asphalt, Inc.*, No. 2:12-cv-1131, 2014 WL 4272722, at *1 (S.D. Ohio Aug. 29, 2014) (requiring contributions on behalf of all company employees, including the owner); *Bunn Enters., Inc. v. Ohio Operating Eng'rs Fringe Benefit Programs*, No. 2:13-cv-357, 2013 WL 3147956, at *7 (S.D. Ohio June 19, 2013) (same)). *See also Wilson v. Fioritto Constr., LLC*, No. 2:17-CV-317, 2018 WL 2149737, at *5–6 (S.D. Ohio May 10, 2018) (same). The *A&K Rock Drilling* court further noted that on the two occasions on which these decisions were appealed, the United States Court of Appeals for the Sixth Circuit affirmed. 2017 WL 2422800, at *7 (citing *Scassa Ashpalt*, 794 F.3d 556 (6th Cir. 2015) and *Bunn Enters.*, 606 F. App'x 798 (6th Cir. 2015)). As a result, "even if [David McElrath] truly served as [DM's] owner or corporate representative, as the company alleges, he still could qualify as an employee for fringe benefit contribution purposes if, as the Funds allege, he performed some work on [DM's] behalf." 2017 WL 2422800, at *7. Accordingly, because David McElrath admittedly performed at least some work within the craft jurisdiction of the CBA, DM owes fringe benefit contributions on his behalf.

Second, similar contractual language has been interpreted to require payment of fringe benefit contributions on all hours worked by the employee in question, even if only some of those hours fall within the craft jurisdiction of the CBA. *See Bunn Enters., Inc. v. Ohio Operating Eng'rs Fringe Ben. Programs*, 606 F. App'x 798 (6th Cir. 2015). In *Bunn*, the Sixth

5

Circuit construed a CBA that required employers to make contributions "for all hours paid to each employee by the Employer under this Agreement." *Id.* at 801. The Sixth Circuit held that this language "unambiguously requires employer signatories to contribute the appropriate benefits contributions for *all* hours worked by their employees, regardless of whether those hours are 'covered' under the contract." *Id.* at 804 (emphasis added).

The *Bunn* court explained the policy basis for its decision by quoting two previous cases from this District, emphasizing that fringe benefit funds like Plaintiffs are entitled to a simple collection procedure under ERISA:

> ERISA dictates a resolution that provides for the simplification of collection procedures for the trustees of fringe benefit funds in order to protect the funds from unnecessary collection costs. . . . Determining the amount of an employer's obligation based upon the total hours worked by an employee covered under a collective bargaining agreement is consistent with this policy concern given that the amount of the contribution obligation can easily be determined by simply examining the employer's payroll records. . . . Therefore, the Defendant is obligated to contribute to the Fringe Benefit Funds based upon all the hours worked by the employees, no matter the totality of their assignments.
>
> * * *
>
> If an employer were entitled to receive a reduction in the amount of benefits paid based upon hours spent in non-covered work, and it were the sole arbiter of what type of work was performed and its records were the only source of that information, it would be exceedingly difficult for a fund to dispute an employer's allocation of hours between covered and non-covered work, and it would therefore be possible for an employer to skew its records in such a way as to minimize its contributions. By providing that benefits are due for all hours worked and paid, whether for covered or non-covered work, the ability to manipulate the facts is reduced or eliminated, and the audit process is much simpler.

*Bunn*, 606 F. App'x at 803–04 (quoting *Noe v. R.D. Jones Excavating*, 787 F. Supp. 759, 765 (S.D. Ohio) and *Orrand v. Shope,* No. 2:00-cv-1161, 2001 WL 1763437, at *2 (S.D. Ohio Jan. 30, 2001)). This District has followed *Bunn* to require payment for all hours worked, "covered" or not, several times. *See*, *e.g.*, *Wilson v. Bridge Overlay Sys., Inc.*, 129 F. Supp. 3d 560, 566–67 (S.D. Ohio 2015); *Wilson v. Chagrin Valley Steel Erectors, Inc.*, No. 2:16-cv-1084, 2018 WL

1512906, at *10 (S.D. Ohio Mar. 27, 2018); *Wilson v. A.K. Rock Drilling, Inc.*, No. 2:16-cv-739, 2018 WL 527375, at *4 (S.D. Ohio Jan. 24, 2018). *See also Noe*, 787 F. Supp. at 764–65 (rejecting employer's argument that it need not contribute funds for hours spent on supervisory assignments that were not included in the agreements and holding that employer was "obligated to contribute to the Fringe Benefit Funds based upon all the hours worked by the employees, no matter the totality of their assignments").

The CBA's language in the present case is indistinguishable from that in *Bunn*. DM agreed to pay fringe contribution benefits on "all hours paid."[3] (CBA 19, ECF No. 20-1.) Therefore, although a substantial amount of David McElrath's hours may have been spent on work for DM outside the craft jurisdiction of the CBA, DM is nonetheless liable for fringe benefit contributions on all David McElrath's hours.

### 2. Brad Doan and Joel McElrath

DM argues that it is not liable for fringe benefit contributions on behalf of Brad Doan and Joel McElrath for two reasons: (1) the work they performed within the CBA's craft jurisdiction was performed "nearly exclusively in Mahoning and Trumbull Counties, Ohio," which are outside the CBA's geographic jurisdiction; and (2) DM has already made fringe benefit contributions on their behalf to the Operating Engineers Union Local No. 66, which has geographic jurisdiction over Mahoning and Trumbull Counties. (Resp. 3, ECF No. 21.) Again, both arguments lack merit.

Taking DM's second argument first: standing alone, the fact that an employer is required to "double-pay" a single employee's fringe benefit contributions "would not be sufficient to

---

[3] The language of the CBA actually states that "Fringe Benefits [not fringe benefit contributions] shall be paid on all hours paid." (CBA 19, ECF No. 20-1.) Although this provision is not a model of clarity, the briefs establish that all parties intend this provision to require fringe benefit *contributions* by DM to the Funds.

relieve the employer of its contractual obligation to make contributions to the ERISA funds." *Orrand v. Hunt Constr. Grp., Inc.*, 852 F.3d 592, 595 (6th Cir. 2002) (quoting *Tr. of B.A.C. Local 32 Ins. Fund v. Ohio Ceiling and Partition Co., Inc.*, 48 F. App'x 188, 196-97 (6th Cir. 2002)). *See also Fioritto Constr.*, 2018 WL 2149737, at *4 (same); *Tr. of Nw. Ohio Plumbers & Pipefitters Pension Plan v. Helm & Assocs.*, No. 3:10 CV 739, 2011 WL 4688784, at *7 (N.D. Ohio Oct. 4, 2011) ("That a CBA requires a double payment is not a valid reason to evade the responsibility" so long as the fringe benefit payments are unambiguously required by the CBA.). Thus, the fact that DM might have already made contributions to Local 66 on behalf of Brad Doan and Joel McElrath does not preclude liability for fringe benefit contributions on their behalf to Plaintiffs.[4]

DM's first argument poses a closer question. As an initial matter, DM's assertion that Brad Doan and Joel McElrath worked "nearly exclusively" outside the CBA's geographic jurisdiction logically implies that they each performed some work within the geographic jurisdiction, and DM admits that these employees did so "on occasion," although it does not further quantify the number of relevant hours. (Resp. 3, ECF No. 21.) DM further asserts that when these employees did perform work within the craft and geographic jurisdictions of the CBA, DM made fringe benefit contributions to Plaintiffs on their behalf. (*Id.*; Urick Aff. ¶ 3, ECF No. 21-2.) Plaintiffs assert that DM's records are insufficient to determine which hours were worked inside or outside the geographic jurisdiction; and, moreover, the same "all hours paid" language of the CBA that required contributions for all hours worked, whether within the

---

[4] DM attaches to its opposition brief two checks purporting to evidence fringe benefit contribution payments by DM to Local 66. (ECF No. 21-2, PAGEID #180–81.) Plaintiffs object to their admission on summary judgment because they were not provided in the audit or in discovery. However, because payment to Local 66 would not result in judgment in DM's favor in any case, the undersigned need not resolve this evidentiary issue.

craft jurisdiction or not, should apply in the same way to all hours regardless of geographic jurisdiction. (Reply 3–5, ECF No. 22.)

The undersigned was unable to locate any controlling authority as to an employer's liability for fringe benefit contributions when only some of a covered employee's hours are performed within the CBA's geographic jurisdiction. DM provides no case law in support of its position, and Plaintiffs cite cases discussing only disputes related to craft jurisdiction. *See Bunn*, 606 F. App'x at 804; *Bridge Overlay Sys.*, 129 F. Supp. 3d at 576–77; *A&K Rock Drilling*, 2018 WL 527375 at *4; *Michigan Laborers' Health Care Fund v. Grimaldi Concrete*, 30 F. 3d 692, 695 (6th Cir. 1994).

Other district courts within the Sixth Circuit considering the question have arrived at inconsistent results. *Compare Michigan Glass & Glazing Indus. Defined Contribution Pension Plan v. CAM Glass, Inc.*, No. 06-12917, 2008 WL 506350, at *14–15 (E.D. Mich. Feb. 22, 2008) with *Cement Masons' Pension Tr. Fund-Detroit & Vicinity v. M&B Concrete, Inc.*, No. 03-CV-70839-DT, 2006 WL 454595, at *2 (E.D. Mich. Jan. 6, 2006). In *Michigan Glass*, the parties made the same arguments advanced here: the employer argued that its fringe benefit contributions should be reduced for work performed outside the CBA's geographic jurisdiction, and the funds argued that the CBA's language required the employer to pay contributions on all hours worked, or, alternatively, that the employer failed to keep sufficient records to prove what work was performed outside the geographic jurisdiction. 2008 WL 506350 at *14. The *Michigan Glass* court determined that CBA language "requir[ing] that an employer contribute the required amount for 'each' or 'all' hour(s) worked by a covered employee" did not "explicitly require an employer to pay contributions on work performed outside the [geographic] jurisdiction." *Id.* at *15. Therefore, the court concluded, "Defendants are not compelled to pay

9

contributions on work which is proven to have been performed outside the geographic scope of the CBA." *Id.* And although the employer presented only "a paucity of evidence as to what work was performed outside the geographic area," the Court concluded that "lists of dates, check numbers, and amounts," along with handwritten notations of the city or county in which the work was allegedly performed, constituted "some evidence" that the amounts sought by the funds were included hours for which the employer was not liable. *Id.* Noting that it must construe the evidence in the employer's favor on summary judgment, the *Michigan Glass* court concluded that "there is a question of fact as to the amount which should be deducted for work performed outside the geographic scope of the CBA" and denied summary judgment for the funds on this issue. *Id.*

In *M&B Concrete*, the employer similarly argued, and the funds did not appear to contest, that its contributions should be reduced for work performed outside the CBA's geographic jurisdiction. 2006 WL 454595 at *2. However, the employer again did not maintain sufficient records to determine which work was performed outside the geographic jurisdiction. *Id.* Unlike the *Michigan Glass* court, the *M&B Concrete* court held that the employer's failure to maintain adequate records as required by ERISA "shifts the burden to the employer to prove that the work performed was covered or not covered [by the CBA's geographic jurisdiction]." *Id.* (citing *Operating Eng'rs Pension Trusts v. B&E Backhoe*, 911 F.2d. 1347, 1354 (9th. Cir. 1988)). The court therefore granted judgment for the funds for fringe benefit contributions based on all hours worked by the relevant employees, regardless of whether the work was performed within the geographic jurisdiction of the CBA. *Id.* In sum, both *Michigan Glass* and *M&B Concrete* found it appropriate to reduce the amount of fringe benefit contributions owed in accordance with work

performed outside the geographic jurisdiction, but the two courts disagreed on which party bears the burden of establishing what work was performed where.

But importantly, both of these cases predate the Sixth Circuit's guidance in *Bunn*. Given *Bunn*'s holding that the CBA's "all hours paid" language requires contributions for all hours worked regardless of whether the work performed was within the CBA's craft jurisdiction, it is unclear why the same language would require contributions only for those hours worked within the CBA's geographic jurisdiction. The policy reasons underlying *Bunn*'s disregard of craft jurisdiction—that funds such as Plaintiffs are entitled to a simplified audit process, without permitting the employer to be the sole arbiter or sole source of records as to which work is "covered"—would seem to apply with equal force to the disregard of geographic jurisdiction. Thus, it seems reasonable to predict that the Sixth Circuit would hold, in contrast to *Michigan Glass* and *M&B Concrete*, that hours worked outside the CBA's geographic jurisdiction should *not* reduce an employer's fringe benefit contribution liability.

Further, even if liability were reduced for work done outside the geographic jurisdiction, it also seems likely that the Sixth Circuit would adopt a burden-shifting framework such that a failure by the employer to keep adequate records of where work was performed would result in liability for all hours worked. The Sixth Circuit has expressly adopted this rule in the craft jurisdiction context. *See Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc.*, 30 F.3d 692, 696 (6th Cir. 1994). In *Grimaldi*, the parties stipulated that the employer may reduce its fringe benefit contribution liability for hours worked outside the craft jurisdiction of the CBA, but the employer failed to keep accurate records as to which hours were covered by the craft jurisdiction. "The issue before the court was not, therefore, interpretation of the parties' rights under the agreement, but whether Grimaldi had effectively forfeited an undisputed right to pay

11

solely for 'covered' work by failing to keep adequate records." *Bunn*, 606 F. App'x at 803 (citing *Grimaldi*, 30 F.3d at 694–96). The Sixth Circuit held that "Grimaldi Concrete failed to maintain adequate records as required by [ERISA]. The burden thus shifted to Grimaldi to prove what work was covered and what was not covered [by the CBA's craft jurisdiction]." *Grimaldi*, 30 F.3d at 696. When the employer was unable to provide records of the amount of covered work performed, the Sixth Circuit found the employer "liable for fringe benefit contributions for all hours worked under the collective bargaining agreement." *Id.* at 697 (citing *Brick Masons Pension Tr. v. Indus. Fence & Supply, Inc.*, 839 F.2d 1333, 1339 (9th Cir. 1988) and *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946) ("The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance" with statutory requirements.)).

In sum, based on the guidance available from the Sixth Circuit, the undersigned finds that DM is liable for fringe benefit contributions on behalf of Brad Doan and Joel McElrath for all hours worked during the audit period, regardless of whether the work was performed within the CBA's geographic jurisdiction. And even if the contractual language requiring contributions for "all hours paid" did not require this result, DM's failure to maintain adequate records or provide any quantifiable evidence of which hours were worked outside the geographic jurisdiction would still result in liability for all hours worked.

**B.     Interest**

Plaintiffs also seek interest on the delinquent fringe benefit contributions. ERISA provides for a mandatory award of interest when judgment is granted in favor of an ERISA plan in an action brought to recover unpaid fringe benefit contributions required by a CBA. 29 U.S.C. § 1132(g)(2)(B); *Michigan Carpenters Council Health and Welfare Fund v. C.J. Rogers, Inc.*, 933 F.2d 376, 388 (6th Cir. 1991) (remedies provided by § 1132(g)(2) are mandatory). Interest

on unpaid contributions is determined "by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26 [prescribing interest rates for underpayments to the Internal Revenue Service]." 29 U.S.C. § 1132(g).

The Funds' Administrator asserts in an affidavit that the rules and regulations adopted by the Trustees of the Funds specify that late contribution payments will carry interest at 18% per annum from the date the delinquencies are discovered. (Wilson Aff. ¶ 4, ECF No. 20-1.) However, Plaintiffs have not submitted these rules and regulations into the record, and the CBA does not speak to interest applicable to delinquent fringe benefit contributions. After DM pointed out in its opposition brief that an award of interest would be inappropriate without documentary evidence of the adopted interest rate, Plaintiffs submitted an exhibit attached to their reply brief that appears to be (1) quoted excerpts of meeting minutes dated at various points in 1980, which represent that motions passed unanimously to increase the "late charges" for delinquent contributions to 1.5% per month (or 18% per annum) at Board of Trustees meetings for each of the four Funds; and (2) quoted excerpts of the Agreement and Declaration of Trust for each of the four Funds, dated at various times between 1960 and 1971, providing that the funds may prescribe, by rule or regulation, penalties for non-payment as the relevant board deems proper. (ECF No. 22-1.)

Plaintiff's evidence in support of an 18% interest rate remains insufficient. Federal Rule of Evidence 1002 requires "[a]n original writing . . . in order to prove its contents unless these rules or a federal statute provides otherwise." And although a duplicate is generally admissible to the same extent as the original under Federal Rule of Evidence 1003, Plaintiffs have not submitted duplicates. Rather, it appears someone has re-typed various excerpts of the original plan documents speaking to late charges and liquidated damages into a single compilation. (*See*

13

ECF No. 22-1.)  Further, although other evidence besides an original or duplicate may suffice under Federal Rule of Evidence 1004 if certain criteria are met, none of those circumstances are present here.  *See* Fed. R. Evid. 1004 (providing that originals or duplicates are not required if, *e.g.*, all the originals have been lost or destroyed, or the party against whom the original would be offered had control of the original).  These re-typed excerpt compilations are therefore insufficient to prove the content of the original plan documents.

Even if this exhibit were admissible to prove the contents of the original plan documents, it would not establish that the Funds have adopted an 18% interest rate.  The meeting minutes refer to "late charges," and in their brief in support of summary judgment, Plaintiffs assert that "[t]he Funds require all employers to pay late charges, or liquidated damages, for their delinquent contributions at a rate of 18% per year."  (Mot. 6, ECF No. 20.)  Thus, according to Plaintiffs' usage of the term, "late charges" refer not to interest, but to liquidated damages.  Similarly, the excerpts of the Agreements and Declarations of Trust refer only to "liquidated damages" and "cost of collection," not to interest.  Plaintiffs have therefore failed to submit any documentary evidence whatsoever that the Funds have adopted any interest rate, let alone 18% per annum.

Accordingly, the Court must ascertain the appropriate interest rate by reference to 26 U.S.C. § 6621.  This section provides that the interest rate on underpayments shall be "the sum of the Federal short-term rate determined under subsection (b), plus 3 percentage points."  26 U.S.C. § 6621(a)(2). For the purpose of this provision, the Federal short-term rate is the monthly interest rate established by 26 U.S.C.§ 1274(d), rounded to the nearest full percent.  26 U.S.C. § 6621(b)(3).  Plaintiffs seek interest on the delinquent contributions "calculated from the date of discovery of the delinquencies (which is usually the date Defendant's payroll records were

audited)." (Wilson Aff. ¶ 4, ECF No. 20-1.) Because the audit in this case was dated September 30, 2019, and the Federal short-term rate rounded to the nearest full percent was 2% per annum for September 2019 (*see* Rev. Rul. 2019-20), the applicable interest rate on DM's delinquent fringe benefit contributions is 2 + 3 = 5% per annum, not the 18% per annum claimed by Plaintiffs.

**C.     Liquidated Damages**

Section 1132(g)(2)(C) also provides for a mandatory award of liquidated damages, in addition to unpaid contributions and interest, in an amount equal to the greater of:

> (i)  interest on the unpaid contributions, or
>
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount [of unpaid fringe benefit contributions].

Plaintiffs rely on the same exhibit for their liquidated damages claim, which they assert should also be calculated at 18% per annum under the plan documents. (ECF No. 22-1.) As discussed above, although the exhibit refers to "late charges" (which term Plaintiffs use elsewhere to refer to "liquidated damages") at a rate of 1.5% per month (which is equivalent to 18% per annum), the documents are not sufficient to prove the content of the original plan documents under Fed. R. Evid. 1002. Accordingly, Plaintiffs are entitled to liquidated damages in an amount equal to the interest on the unpaid contributions outlined above under § 1132(g)(2)(C)(i).

**D.     Education and Safety Fund**

As a final matter, the Court notes that the audit of DM's payroll records reflects delinquent fringe benefit contributions owing by DM to the Ohio Operating Engineers Education and Safety Fund in the amount of "0.00." (Audit Cover Letter, ECF No. 20-2.) Therefore, because DM has not failed to remit any required fringe benefit contributions to the Education and Safety Fund, judgment for DM is appropriate as to this Fund.

## IV. DISPOSITION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment (ECF No. 20) is **GRANTED IN PART and DENIED IN PART**.

The Clerk shall enter judgment for Plaintiffs (except the Trustees of the Ohio Operating Engineers Education and Safety Fund) for unpaid fringe benefit contributions in the amount of $199,260.96, plus interest at the rate of 5% from September 30, 2019, until the date of this Opinion and Order, plus liquidated damages in amount equal to the interest award.

The Clerk shall enter judgment in favor of Defendant as to all claims by Plaintiff the Trustees of the Ohio Operating Engineers Education and Safety Fund.

This case shall remain open pending resolution of Plaintiffs' motion for attorney's fees and costs. Plaintiffs shall file their motion for attorney's fees and costs **WITHIN FOURTEEN DAYS** of the date of this Opinion and Order.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE